# LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* MELTON.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 180. Argued April 28, 29, 1910.—Decided May 31, 1910.

When a Federal question does exist the writ of error will not be dismissed as frivolous or as foreclosed by former decisions when analysis of those decisions is necessary, where there has been division of opinion in the court below, as in this case, and conflict of opinion in prior decisions as to the point involved.

This court is not concerned with the construction given by a state court to the statute of another State unless such construction offends a properly asserted Federal right.

Whether a state court failed to give the full faith and credit required by the Federal Constitution to a statute of another State because it did not construe it as construed by the courts of the latter State is not open in this court unless the question is properly asserted in the state court.

The reiterated assertion in the lower court of Federal right based solely on one provision of the Federal Constitution is basis for the inference that no other provision was relied upon.

A question under the Federal Constitution does not necessarily arise in every case in which the courts of one State are called upon to construe the statute of another State; the general rule in the absence of statutory provision, is that a settled construction of a statute relied upon to control the court of another State must be pleaded and proved, and, if not pleaded and proved, the court construing the statute is not deprived of its independent judgment in regard thereto.

In determining on writ of error a Federal question, this court cannot predicate error as to matters which should be, and are not, pleaded or proved.

The equal protection provision of the Fourteenth Amendment did not deprive the States of the power to classify, but only of the abuse of such power; nor is the clause offended against because some inequality may be occasioned by a classification in legislation properly enacted under the police power.

A classification in a state police statute proper as to a general class is not unconstitutional under the equal protection clause of the Fourteenth Amendment because it ignores inequalities as to some persons embraced within the general class.

The Employers' Liability Statute of Indiana of 1893 is not unconstitutional under the equal protection clause of the Fourteenth Amendment because it subjects railroad employés to a special rule as to the doctrine of fellow servant, *Tullis* v. *Lake Erie & Western R. R. Co.*, 175 U. S. 348; *Pittsburg Ry. Co.* v. *Martin*, 212 U. S. 560; nor is it unconstitutional under that clause as to such employés of railroads, such as bridge carpenters, as are not subject to the hazards peculiarly resulting from the operation of a railroad.

The fact that since the decision of a state court under review construing a police statute of another State as including certain elements of a class, the highest court of the enacting State has construed the statute as excluding such elements does not necessarily enlarge the duty of this court in determining the validity of the decision under review.

127 Kentucky, 276, affirmed.

THE facts, which involve the constitutionality of the Employers' Liability Act of Indiana as applied to employés of railroads engaged in work other than the direct operation of the railroad, are stated in the opinion.

*Mr. Benjamin D. Warfield,* with whom *Mr. Henry Lane Stone* was on the brief, for plaintiff in error:

While a State may abolish the common-law doctrine of fellow-servants and assumed risks as to every employé in the State it cannot do so as to a class unless there is a reasonable basis for the classification. *Akeson* v. *Railroad Co.*, 106 Iowa, 54.

Defendant in error, although employed by the railroad company, was not engaged in an extra-hazardous employment—one peculiar to railroads—such as to justify the application of the statute as to him.

*Tullis* v. *L. E. & W. Ry. Co.*, 175 U. S. 348, upheld the constitutionality of the statute involved in this case as applied to the facts in that case, but the question involved in this case was not then raised. See *S. C.*, 105 Fed. Rep. 554, and so also in *M. P. Ry. Co.* v. *Mackey*, 127 U. S. 205, and *P., C., C. & St. L. Ry. Co.* v. *Montgomery*, 152 Indiana, 1.

Unless the Indiana statute is construed as embracing only those employés of railroad companies who are engaged in the hazardous branches of railroad service and thus making a reasonable classification it contravenes the Fourteenth Amendment, as aimed against one class of persons and leaving other persons subject to the more favorable rules of the common law. *Gulf, C. & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 150.

The defendant in error was not engaged in an extra-hazardous employment. He was not injured in the operation of a railroad. The carpenter's work he was doing for plaintiff in error was no more hazardous because his employer was a railroad company than it would have been if his employer had been an individual, or a corporation other than a railroad company. *Cotting* v. *Stockyards Co.*, 183 U. S. 79; quoting approvingly Cooley's Const. Lim., 5th ed., 484; *Connolly* v. *Sewer Pipe Co.*, 184 U. S. 540; *State* v. *Loomis*, 115 Missouri, 807; *Adair* v. *United States*, 208 U. S. 161.

The power to regulate interstate commerce, great and paramount as that power is, cannot be exerted in violation of any fundamental right secured by other provisions of the Constitution. *Gibbons* v. *Ogden*, 9 Wheat. 1, 196; *Lottery Case*, 188 U. S. 321, 353.

Unless the statute is limited by construction so as to

exclude defendant in error from its operation it is unconstitutional and void.

The term "employés" in the Iowa statute is limited to those engaged in operating the railroad. *Déppe* v. *Chi., R. I. & P. R. R. Co.*, 36 Iowa, 52, and see *Ind. Tr. & Ter. Co.* v. *Kinney*, 171 Indiana, 612; *Akeson* v. *C., B. & Q. Ry. Co.*, 106 Iowa, 54.

The employment at the time of the injury must have exposed the complainant to the hazards of railroading, without reference to what he may be required to do at other times. *Butler* v. *Railroad Co.*, 87 Iowa, 206; *Keatley* v. *Railroad Co.*, 94 Iowa, 685; *Canon* v. *Railway Co.*, 101 Iowa, 613. See also construction of similar Minnesota and Kansas laws. *Lavallee* v. *Railway Co.*, 40 Minnesota, 249; *Railroad Co.* v. *Pontius*, 52 Kansas, 264; *Johnson* v. *Railway Co.*, 43 Minnesota, 222.

One working on a railroad does not necessarily come under such a statute. *Potter* v. *Railway Co.*, 46 Iowa, 399; *Smith* v. *Railroad Co.*, 59 Iowa, 73; *Schroeder* v. *Railway Co.*, 41 Iowa, 344; *S. C.*, 47 Iowa, 375.

The party injured must be exposed to the hazards of railroading. *Pyne* v. *Railway Co.*, 54 Iowa, 223; *Foley* v. *Railway Co.*, 64 Iowa, 644; *Larson* v. *Railway Co.*, 91 Iowa, 81; *Railroad Co.* v. *Artery*, 137 U. S. 507; *Malone* v. *Railroad Co.*, 65 Iowa, 417; *Reddington* v. *Railroad Co.*, 108 Iowa, 96; *Dunn* v. *C., R. I. & P. Ry. Co.*, 130 Iowa, 580.

In Minnesota the corresponding statute has been construed as applying only to employés engaged in operation of railroads. *Lavallee* v. *Railroad Co.*, 40 Minnesota, 249, citing *McAunich* v. *Railroad Co.*, 20 Iowa, 338; *Johnson* v. *Railroad Co.*, 43 Minnesota, 222; *Martyn* v. *Railroad Co.*, 92 Minnesota, 302. On this point see also *Givens* v. *Southern Railway Co.*, 49 So. Rep. 180; *Ballard* v. *Miss. Cotton Oil Co.*, 81 Mississippi, 507.

The Indiana statute as construed by the highest court

of that State was only upheld as to railroads because the classification was proper and that would not be the case if it related to men employed in non-hazardous branches. See *So. Ind. Ry.* v. *Harrell*, 161 Indiana, 262; *I. & G. R. R. Co.* v. *Foreman*, 62 Indiana, 85; *Bedford Quarries Co.* v. *Bough*, 168 Indiana, 671, and cases cited.

The opinion in this case below was not unanimous, 127 Kentucky, 276, 292; two judges dissented on the ground that, as construed by the Kentucky court, the Indiana statute was unconstitutional.

The Kentucky court refused to give full faith and credit to the Indiana statute as construed by the courts of that State.

The full faith and credit clause was designed to give to the public acts, records and judicial proceedings of one State the same force in other States as they have in the State of their origin; no more, no less. The Court of Appeals of Kentucky was bound to accept the construction of the Employers' Liability Act of Indiana, which the Supreme Court of that State has placed upon that statute, and, having failed to do so, this court must enforce the duty which the State of Kentucky owed in the premises. Although where the case turns upon the construction by a state court of a statute of another State, and not upon the validity of such statute, a decision on that question is not necessarily of a Federal character; yet the question depends upon the particular facts of each case and the manner in which they are presented, how far such questions can be regarded as coming under the full faith and credit clause of the Constitution. *Finney* v. *Guy*, 189 U. S. 335, and *C. & O. Ry. Co.* v. *McCabe*, 213 U. S. 207.

In such statutory actions the law of the place governs in enforcing the right in another jurisdiction. See *A., T. & S. F. Ry. Co.* v. *Sowers*, 213 U. S. 55; *Am. Exp. Co.* v. *Mullins*, 212 U. S. 311.

*Mr. James W. Clay,* with whom *Mr. William L. Gordon, Mr. William J. Cox, Mr. Maurice K. Gordon* and *Mr. J. F. Clay* were on the brief, for defendant in error:

The Court of Appeals of Kentucky determined the case on the record. The plaintiff in error did not plead the construction or application of the Indiana statute by the courts of Indiana. It did not prove or attempt to prove such construction and application.

The Court of Appeals was therefore left to construe the Indiana statute pleaded as it would local laws, and it is settled that under such circumstances, no Federal question arises.

The construction and application of the Indiana statute by the courts of that State was a question of fact to be proved, and the finding of the Court of Appeals of Kentucky upon the record as it stands in this case, is binding upon the United States Supreme Court. *Eastern B. & L. Assn.* v. *Ebaugh,* 185 U. S. 114; *Chicago &c. R. Co.* v. *Wiggins Ferry Co.,* 119 U. S. 615; *Glenn* v. *Garth,* 147 U. S. 360; *Lloyd* v. *Matthews,* 155 U. S. 223; *Johnson* v. *N. Y. Life Ins. Co.,* 187 U. S. 491; *Banholzer* v. *Same,* 178 U. S. 402; *Allen* v. *Allegheny Co.,* 196 U. S. 458; *Eastern B. & L. Assn.* v. *Williamson,* 189 U. S. 122; *Finney* v. *Guy,* 189 U. S. 335; *Martin* v. *Pittsburg &c. R. Co.,* 203 U. S. 284; *Adams Express Co.* v. *Walker,* 119 Kentucky, 127; *Root* v. *Meriwether,* 8 Bush (Ky.), 400.

The Indiana Employers' Liability Statute as construed by the Kentucky Court of Appeals and applied to the facts of this case, is not in conflict with the equal protection clause of the Fourteenth Amendment. *Pittsburg &c. R. Co.* v. *Montgomery,* 152 Indiana, 1; *Tullis* v. *Lake Erie &c. R. Co.,* 175 U. S. 348; *Pittsburg &c. R. Co.* v. *Leightheiser,* 78 N. E. Rep. 1033; *Bedford Quarries Co.* v. *Bough,* 80 N. E. Rep. 529; *Pittsburg &c. R. Co.* v. *Ross,* 80 N. E. Rep. 845; *Same* v. *Same,* 212 U. S. 560.

For the general principles to be applied in testing con-

stitutionality of such statutes see *Barbier* v. *Connolly*, 113 U. S. 27; *Railroad Co.* v. *Mackey*, 127 U. S. 205; *Magoun* v. *Bank*, 170 U. S. 283; *Railroad Co.* v. *Ellis*, 165 U. S. 150.

The nature of employment was hazardous; the work was necessary to and connected with the operation of the railroad; legislative power and constitutional sanction is not measured by a comparison of danger. *Chicago &c. R. Co.* v. *Stahley*, 62 Fed. Rep. 363; *Chicago &c. R. Co.* v. *Pontius*, 157 U. S. 209; *Callahan* v. *St. L. &c. Ry. Co.*, 170 Missouri, 473; *St. Louis &c. R. Co.* v. *Callahan*, 194 U. S. 628.

The Kentucky Court of Appeals having found as a fact that the work at which defendant in error was engaged was no less perilous than the work of an operative on one of its trains, and that the work at which he was engaged was "essential to the operation of a railroad," its findings are conclusive and not subject to review by the Supreme Court of the United States. *Dower* v. *Richards*, 151 U. S. 658; *Hedrick* v. *Santa Fe &c., R. R. Co.*, 167 U. S. 673; *Keokuk &c. R. Co.* v. *Illinois*, 175 U. S. 626; *Gardner* v. *Bonestell*, 180 U. S. 362.

For state decisions applying the Employers' Liability statutes of Georgia, Texas and North Carolina, to employments similar to that shown in the case at bar, and holding them constitutional as applied, see *Railroad Co.* v. *Ivey*, 73 Georgia, 504; *Railroad Co.* v. *Miller*, 90 Georgia, 571; *Railroad Co.* v. *Hicks*, 22 S. E. Rep. 613; *Campbell* v. *Cook*, 86 Texas, 630; *Railroad Co.* v. *Mohrmann*, 93 S. W. Rep. 1090; *Sherman* v. *Railroad Co.*, 91 S. W. Rep. 561; *Railroad Co.* v. *Carlin*, 111 Fed. Rep. 777; *S. C.*, 189 U. S. 354; *Hancock* v. *Norfolk R. Co.*, 32 S. E. Rep. 679; *Rutherford* v. *Southern R. Co.*, 35 S. E. Rep. 136; *Mott* v. *Southern R. Co.*, 42 S. E. Rep. 601; *Sigman* v. *Southern R. Co.*, 47 S. E. Rep. 420; *Nicholson* v. *Tran. R. Co.*, 51 S. E. Rep. 40.

And for other decisions with reference to other statutes.

see *Pierce* v. *Van Dusen*, 72 Fed. Rep. 693; *Railroad Co.* v. *Mackey*, 127 U. S. 205; *Minn. Iron Co.* v. *Kline*, 199 U. S. 593; *Railroad Co.* v. *Humes*, 115 U. S. 512; *Railroad Co.* v. *Beckwith*, 129 U. S. 26; *Cargill Co.* v. *Minn. &c.*, 180 U. S. 452; *Railroad Co.* v. *Herrick*, 127 U. S. 210; *Railroad Co.* v. *Emmons*, 149 U. S. 364; *Kane* v. *Erie R. Co.*, 133 Fed. Rep. 681.

As to the Federal Employers' Liability Act see *El Paso &c. R. Co.* v. *Gutierrez*, 215 U. S. 87.

The statute as construed does not deprive plaintiff in error of its property without due process of law.

MR. JUSTICE WHITE delivered the opinion of the court.

For personal injuries Spencer Melton recovered a judgment against the plaintiff in error in the Circuit Court of Hopkins County, Kentucky. The Court of Appeals affirmed the judgment (127 Kentucky, 276), whereupon this writ of error was prosecuted.

Melton, a carpenter, was injured on March 21, 1905, while in the employ of the railway company. He was one of a construction crew, composed of a foreman and six men, who usually did what is described as bridge carpentering. On the date mentioned the crew was engaged, alongside the track of the railway company at Howell, Indiana, in constructing the foundation of a coal tipple at which the engines might coal. A bent or frame of timber, composed of heavy pieces fastened together, and intended to be used as part of the foundation of the tipple, which was lying flat upon the ground, was being raised for the purpose of placing it in the foundation. The lifting was accomplished by means of a block and tackle. A pulley was fastened by an iron chain to an upright piece of timber, and through the pulley a rope passed, which was attached at one end to the bent, so that on hauling on the rope at the other end the bent or frame

was slowly lifted up. Most of the men were engaged in hauling on the rope, while the foreman and Melton under his orders were standing beneath the bent and were engaged in placing props under the bent to prevent its lowering, when the strain upon the rope passing through the pulley was relaxed. While Melton was in this position a link of the chain which held the pulley at the top of the upright post broke, and the bent fell to the ground with Melton underneath, inflicting upon him serious and permanent injuries. The chain which broke was furnished by the foreman of the gang and had been put in position under his directions.

Melton was a resident of Hopkins County, Kentucky, and he there commenced this action. The right to recover was based upon the charge that the injury was occasioned through the furnishing by the corporation of unsafe tools to do the work of raising the bent. Besides generally controverting the cause of the injuries, as alleged, the answer of the company set up the defenses of contributory negligence and assumption of the risk. Thereafter Melton was allowed to file an amendment to his petition. By the amendment it was substantially alleged that he was injured without any fault on his part, and solely owing to a defect in the condition of the works or tools connected with or in use in the business of the defendant, and that such defect was the result of negligence on the part of the foreman, who was the person entrusted with the duty of keeping such tools or works in a proper condition, and the accident was also charged to have been caused by the negligent orders of the foreman, to whose directions Melton was bound to conform. The sufficiency of the facts alleged to entitle to recovery was expressly based upon the provisions of the first and second subsections of § 1 of an act of the legislature of Indiana of March 4, 1893, known as the Employers' Liability Statute, reading as follows:

"Sec. 1. Be it enacted by the General Assembly of the State of Indiana, That every railroad . . . operating in this State shall be liable in damages for personal injury suffered by any employé while in its service, the employé so injured being in the exercise of due care and diligence, in the following cases:

"First. When such injury is suffered by reason of any defect in the condition of ways, works, plants, tools and machinery connected with or in use in the business of such corporation, when such defect was the result of negligence on the part of the corporation, or some person entrusted by it with the duty of keeping such ways, works, plant, tools or machinery in proper condition.

"Second. Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employé at the time of the injury was bound to conform, and did conform."

The court, on the motion of the railway company, having required Melton to determine whether to rely upon the common law or the statute, he elected to base his right to recover on the statute. Thereupon the railway company answered the amended petition, and therein stated as follows:

"Defendant says that the said Indiana statute pleaded cannot and does not apply to the facts of this case, and plaintiff cannot rely thereon, and that under the law of Indiana, as to the character of work then in hand, the plaintiff was a fellow servant with the said foreman of the construction crew for whose negligence the defendant is not liable."

Before trial, permission being granted, the railway company by an additional amendment defended on the ground that the Indiana statute relied upon, if held applicable to the facts alleged, was repugnant to the constitution of Indiana and to the equal protection clause of the Fourteenth Amendment. The averments on this subject were

lengthy, and concluded as follows: "Defendant distinctly raises the Federal question that the said statute, in so far as made to apply to the facts in this case, is violative of said provision of the Constitution of the United States and void." The provision referred to, as shown by the context, was the equal protection clause of the Fourteenth Amendment.

On the trial counsel for the railway company offered as evidence of the common law of the State of Indiana on the subject of fellow-servants the opinions of the Supreme Court of Indiana in the following cases: *New Pittsburg Coal & Coke Co.* v. *Peterson,* filed October 31, 1893, 136 Indiana, 398; *Southern Indiana R. R. Co.* v. *Harrell,* filed October 9, 1903, 161 Indiana, 689; *Indianapolis & G. Rapids Transit Co.* v. *Foreman,* filed January 29, 1904, 162 Indiana, 85.

At the close of the evidence for plaintiff, and also upon the conclusion of all the evidence, the railway company unsuccessfully moved the court to peremptorily instruct the jury to find in its favor for the following reasons:

"1. There is no evidence of actionable negligence proven.

"2. The Indiana statute upon which this action is based does not apply to the facts proven.

"3. In so far as the terms of the Indiana statute apply to the facts proven, they are unconstitutional and void. They are discriminatory against defendant and deny it the equal protection of the law. They are violative of the constitution of Indiana and of section 1, article 14, of the Constitution of the United States, being section 1 of the Fourteenth Amendment thereto.

"4. The said Indiana statutes were not intended to be enforced out of the State of Indiana, and are against the policy of the State of Kentucky and not enforcible in a Kentucky forum."

The railway company in its request for instructions, which were refused, and to which refusals it excepted,

substantially asked that the general principles of the common law of Indiana as to fellow-servant and assumption of the risk, as exemplified by the Indiana decisions which it had offered in evidence, be applied to the case. The court, on the contrary, in the instructions which it gave substantially applied the provisions of the Indiana statute, as by it construed. In the motion for a new trial fifteen reasons were stated, those which made reference to the statute or to the Constitution of the United States being the following:

"14. The court erred in applying the Indiana statute to the facts of this case. The court erred in enforcing the Indiana statute in a Kentucky forum.

"15. The court erred in upholding and applying the Indiana statute pleaded in this case, when same in so far as applicable to the facts proven in this case is unconstitutional and void. It is discriminatory against defendant, and denies it the equal protection of the law. It is violative of the constitution of the State of Indiana and of section 1 of article 14 of the Constitution of the United States, which guarantees to defendant the equal protection of the law."

The court below held that the Supreme Court of Indiana had construed the statute as applicable both to persons and corporations operating railroads. It further held that the statute embraced the case in hand because Melton came within the category of persons injured in the operation of a railroad, as "the construction of a coal tipple is . . . essential to the operation of a railroad." As thus construed the repugnancy of the statute to the equal protection clause of the Constitution of the United States was considered. It was decided that for the purpose of abrogating or modifying the common law doctrine of fellow-servant it was competent for the law-making power of a State, without offending against the equal protection clause, to classify railroad employés because of

the hazard attached to their vocation, and that a statute
doing this need not be confined to employés who were en-
gaged in and about the mere movement of trains, but
could also validly include other employés doing work es-
sential to be done to enable the carrying on of railroad
operations. Thus, referring to the alleged distinction be-
tween railroad operatives engaged in train movement and
those who were not, the court said:

"We are unable to see the force of this distinction. A
railroad cannot be run without bridges; bridges cannot be
built without carpenters. The work of a bridge carpenter
on a railroad is perhaps no less perilous than the work of
an operative on one of its trains. Coal tipples are no less
essential to the operation of a railroad than bridges, be-
cause the engines cannot be operated without coal. The
construction of a coal tipple is therefore essential to the
operating of a railroad. As has been well said, the legis-
lature cannot well provide for all subjects in one act.
Legislation must necessarily be done in detail, and an
act regulating railroads violates no constitutional provi-
sion because it is made to apply only to railroads. *In-
dianapolis &c. R. R. Co.* v. *Kane,* 80 N. E. Rep. 841;
*Schoolcrafts, Adm.,* v. *L. & N. R. R. Co.,* 92 Kentucky, 233;
*Chicago &c. R. R. Co.* v. *Stahley,* 62 Fed. Rep. 363; *Calla-
han* v. *R. R. Co.,* 170 Missouri, 473, 194 U. S. 628; *R. R.
Co.* v. *Ivy,* 73 Georgia, 504."

The railway company asked a rehearing for the sole
purpose of a reconsideration of what was referred to as
the very important Federal question involved, viz., "the
unconstitutionality of the Indiana statute, as applied to
the facts of this case." The court permitted the ques-
tion whether a rehearing should be granted to be orally
argued, and, after such argument, in a brief opinion denied
the request. Two members of the court, however, dis-
sented, on the ground that the statute as construed was
repugnant to the equal protection clause of the Fourteenth

Amendment.    This writ of error was then prosecuted, and
the only reference to the Constitution of the United
States made in the assignment of error filed with the ap-
plication for the writ was that embraced in the contention
that the Indiana statute could not be constitutionally
applied to the facts without causing the statute to be re-
pugnant to the Fourteenth Amendment.

We primarily dispose of a motion to dismiss, which is
rested upon the ground that the Federal question relied
upon has been so conclusively foreclosed by prior deci-
sions of this court as to cause it to be frivolous, and there-
fore not adequate to confer jurisdiction.    The contention
may not prevail, even although it be admitted that a care-
ful analysis of the previous cases will manifest that they
are decisive of this.    We say this because, for the pur-
pose of the motion to dismiss, the issue is not whether the
Federal question relied upon will be found upon an ex-
amination of the merits to be unsound, but whether it is
apparent that such question has been so explicitly fore-
closed as to leave no room for contention on the subject,
and hence cause the question to be frivolous.    That this
is not the case here we think results from the following
considerations, *a*, because analysis and expounding is nec-
essary in order to make clear the decisive effect of the
prior decisions upon the issue here presented; *b*, because
the division in opinion of the lower court as to whether the
statute as construed was repugnant to the equal protec-
tion clause of the Fourteenth Amendment suggests that
the controversy on the subject here presented should not
be treated as of such a frivolous character as not to afford
ground for jurisdiction to review the action of the court
below; and, *c*, because while an examination of the opin-
ions of state courts of last resort will show that there is
unanimity as to the power consistently with the equal
protection of the law clause to classify railroad employés
actually engaged in the hazardous work of moving trains,

such examination will also disclose that there is some conflict of view as to whether a statute on that subject as broad as is the statute under review as construed below is consistent with the clause, thus additionally serving to point to the necessity of analyzing and considering the subject anew instead of treating it as being so obviously foreclosed as not to permit an examination of the subject.

Coming to the merits, we at once premise that we are not concerned with the construction affixed by the court below to the Indiana statute, unless it be that that construction offends against some Federal right properly asserted and open to our consideration. In the argument at bar on behalf of the railway company two rights of this character are insisted upon. First, it is said that the court below, in applying the statute, has caused it to embrace a class of employés which the statute did not include, and thereby gave it a wrongful construction, in violation of the full faith and credit clause of the Constitution of the United States. Second, that in any event the statute as construed is repugnant to the equal protection clause of the Fourteenth Amendment. We separately dispose of these propositions.

*The full faith and credit clause.* The contentions as to this proposition rest upon the assumption that it has been conclusively settled by the Supreme Court of Indiana that the statute only changed the general rule prevailing in that State in respect to the doctrine of fellow-servant as to railroad employés actually engaged in the hazard of train service, and therefore did not include an employé engaged in the character of work which Melton was performing when injured, and that to give the statute a contrary meaning was to violate the full faith and credit clause. If, however, the premise upon which the proposition rests, and the legal deduction based upon that premise be for the sake of the argument conceded, the contention is, nevertheless, without merit, because of the

failure of the railway company to plead or in any adequate way call the attention of the court below to the fact that, in connection with the proper construction of the statute, the benefit of the due faith and credit clause of the Constitution of the United States was relied on. We say this because the statement which we have previously made of the case fails to show from first to last, even up to and including the application for rehearing, the assertion of any claim to the protection of the full faith and credit clause.   Indeed, that statement not only shows a failure to make such claim, but discloses such direct and express action on the part of the railway company as justly to give rise to the inference that a reliance upon any claim of Federal right resulting from the full faith and credit clause was not thought to be involved in the case.   We say this, because the frequent and reiterated assertions of Federal right, based solely upon the equal protection clause of the Fourteenth Amendment, sustains such conclusion.

Further, even if, for the sake of the argument only, the failure to plead the full faith and credit clause, or to direct the attention of the court below to the fact that reliance was placed upon that clause, could be supplied upon the theory that as the cause of action was based upon an Indiana statute, by implication the due faith and credit clause was necessarily involved, nevertheless the contention would be without merit.   This follows because, as pointed out in *Finney* v. *Guy*, 189 U. S. 335, 340, and *Allen* v. *Allegheny County*, 196 U. S. 458, 463, it is not true to say that necessarily in every case where the court of one State is called upon to determine the proper construction of a statute of another State, a question under the Constitution of the United States arises.   Although the Indiana statute was at issue and its meaning was necessarily involved, the duty of construing it rested upon the court below.   The general rule is that in the absence

of a statute to the contrary if a settled construction by
the court of last resort of a State enacting a statute is re-.
lied upon to control the judgment of the court of another
State in interpreting the statute, such settled construc-
tion must be pleaded and proved. *Eastern Bldg. & Loan*
*Assn.* v. *Ebaugh*, 185 U. S. 114, and cases cited. As,
however, it is not asserted that there was a statute of
Kentucky controlling the courts of that State in constru-
ing the statutes of other States, and as there was no plead-
ing or proof as to the existence of any such settled con-
struction, it follows that there is nothing presented, which
can be held to have deprived the court below of its power
to exercise its independent judgment in interpreting the
statute. Our duty, of course, is confined to determining
whether error was committed by the court below as to the
Federal questions involved, and as it is impossible to
predicate error as to matters not pleaded or proved in the
court below, which were essential to be pleaded and
proved, it follows that the contention concerning. the
denial of the protection of the full faith and credit clause
furnishes no ground for reversal. *Johnson* v. *N. Y. Life*
*Ins. Co.*, 187 U. S. 491, 495.

*The equal protection of the law clause.* That the Four-
teenth Amendment was not intended to and does not
strip the States of the power to exert their lawful police
authority is settled, and requires no reference to author-
ities. And it is equally settled—as we shall hereafter
take occasion to show—as the essential result of the ele-
mentary doctrine that the equal protection of the law
clause does not restrain the normal exercise of govern-
mental power, but only abuse in the exertion of such au-
thority, therefore that clause is not offended against
simply because as the result of the exercise of the power
to classify some inequality may be occasioned. That is
to say, as the power to classify is not taken away by the
operation of the equal protection of the law clause, a wide

scope of legislative discretion may be exerted in classifying without conflicting with the constitutional prohibition.

It is beyond doubt foreclosed that the Indiana statute does not offend against the equal protection clause of the Fourteenth Amendment, because it subjects railroad employés to a different rule as to the doctrine of fellow-servant from that which prevails as to other employments in that State. *Tullis* v. *Lake Erie & W. R. R. Co.*, 175 U. S. 348; *Pittsburg &c. Ry. Co.* v. *Ross*, 212 U. S. 560. But while conceding this the argument is that classification of railroad employés for the purpose of the doctrine of fellow-servant can only consistently with equality and uniformity embrace such employés when exposed to dangers peculiarly resulting from the operation of a railroad, thus affording ground for distinguishing them for the purpose of classification from co-employés not subject to like hazards or employés engaged in other occupations. The argument is thus stated: "Plaintiff in error does not question the right of the legislature of Indiana to classify railroads in order to impose liability upon them for injuries to their employés incident to railroad hazards, but it does insist that to make this a constitutional exercise of legislative power the liability of the railroads must be made to depend upon the character of the employment and not upon the character of the employer." Thus stated, the argument tends to confuse the question for decision, since there is no contention that the statute as construed bases any classification upon some supposed distinction in the person of the employer. The idea evidently intended to be expressed by the argument is, that although, speaking in a general sense, it be true that the hazards arising from the operation of railroads are such that a classification of railroad employés is justified, yet as in operating railroads some employés are subject to risks peculiar to such operation and others to risks which

however serious they may be, are not in the proper sense risks arising from the fact that the employés are engaged in railroad 'work, the legislative authority in classifying may not confound the two by considering in a generic sense the nature and character of the work performed by railroad employés collectively considered, but must consider and separately provide for the distinctions occasioned by the varying nature and character of the duties which railroad operatives may be called upon to discharge. In other words, reduced to its ultimate analysis the contention comes to this, that by the operation of the equal protection clause of the Fourteenth Amendment the States are prohibited from exerting their legitimate police powers upon grounds of the generic distinction obtaining between persons and things, however apparent such distinction may be, but, on the contrary, must legislate upon the basis of a minute consideration of the distinctions which may arise from accidental circumstances as to the persons and things coming within the general class provided for. When the proposition is thus accurately fixed it necessarily results that in effect it denies the existence of the power to classify, and hence must rest upon. the assumption that the equal protection clause of the Fourteenth Amendment has: a scope and effect upon the lawful authority of the States contrary to the doctrine maintained by this court without deviation. This follows since the necessary consequence of the argument is to virtually challenge the legislative power to classify and the numerous decisions upholding that authority. To this destructive end it is apparent the argument must come, since it assumes that however completely a classification may be justified by general considerations, such classification may not be made if inequalities be detected as to some persons embraced within the general class by a critical analysis of the relation of the persons or things otherwise embraced within the general class. A brief reference to some of the cases

dealing with the power of a State to classify will make the error of the contention apparent.

In *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 294, 296, while declaring that the power of a State to distinguish, select and classify objects of legislation was of course not without limitation, it was said, "necessarily this power must have a wide range of discretion." After referring to various decisions of this court, it was observed:

"There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things."

Again considering the subject in *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, it was reiterated that the legislature of a State has necessarily a wide range of discretion in distinguishing, selecting and classifying, and it was declared that it was sufficient to satisfy the demand of the Constitution if a classification was practical and not palpably arbitrary.

In *Minnesota Iron Co.* v. *Kline,* 199 U. S. 593, a statute of Minnesota, providing that the liability of railroad companies for damages to employés should not be diminished by reason of accident occurring through the negligence of fellow-servants, was held not to discriminate against any class of railroads, or to deny the equal protection of the laws because of a proviso which excepted employés engaged in construction of new and unopened railroads. In the course of the opinion the court said (p. 598): "The whole case is put on the proviso, and the argument with regard to that is merely one of the many attempts to impart an overmathematical nicety to the prohibitions of the Fourteenth Amendment." These principles were again applied in *Martin* v. *Pittsburg &c. R. R. Co.,* 203 U. S. 284, and the doctrines were also fully

considered and reiterated at this term in *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114.

And coming to consider the concrete application made of these general principles in the decisions of this court which have construed the statute here in question, and statutes of the same general character enacted in States other than Indiana, we think when rightly analyzed it will appear that they are decisive against the contention now made. It is true that in the *Tullis case,* which came here on certificate, the nature and character of the work of the railroad employé who was injured was not stated, and that reference in the course of the opinion was made to some state cases, limiting the right to classify to employés engaged in the movement of trains. But that it was not the intention of the court to thereby intimate that a classification if not so restricted would be repugnant to the equal protection clause of the Fourteenth Amendment, will be made clear by observing that the previous case of *Chicago &c. R. Co.* v. *Pontius,* 157 U. S. 209, was cited approvingly, in which, under a statute of Kansas classifying railroad employés, recovery was allowed to a bridge carpenter employed by the railroad company, who was injured while attempting to load timber on a car. And in the opinion in the *Pontius case* there was approvingly cited a decision of the Court of Appeals of the Eighth Circuit (*Chicago, R. I. & P. R. Co.* v. *Stahley,* 62 Fed. Rep. 362), wherein it was held that under the same statute an employé injured in a round-house while engaged in lifting a driving rod for attachment to a new engine could recover by virtue of the statute. All this is made plainer by the ruling in *St. Louis Merchants' Bridge Terminal Ry. Co.* v. *Callahan,* 194 U. S. 628, where, upon the authority of the *Tullis case,* the court affirmed a judgment of the Supreme Court of Missouri, which held that recovery might be had by a section hand upon a railroad who, while engaged in warning passersby in a street be-

neath an overhead bridge, was struck by a tie thrown from the structure.

While, as we have previously said, it is true there are state decisions dealing with statutes classifying railroad employés sustaining the restricted power to classify which is here insisted upon, we do not think it is necessary to review them or to notice those tending to the contrary. They are referred to in the opinions rendered in the court below. Nor do we think our duty in this respect is enlarged because since the judgment below was rendered the court of last resort in Indiana (*Indianapolis &c. Co.* v. *Kinney,* 171 Indiana, 612, and *Cleveland, C. C. & St. L. Ry. Co.* v. *Foland,* decided April 20, 1910, and not yet reported) has, upon the theory that it was necessary to save the statute in question from being declared repugnant to the equality clause of the state constitution and the Fourteenth Amendment, unequivocally held that the statute must be construed as restricted to employés engaged in train service.

*Affirmed.*