### Ex Parte Johnny George.

No. 24072. October 6, 1948.
Rehearing Denied December 1, 1948.

466

Hon. R. M. Nicols, Judge Presiding.

*Feild & Woodall,* of Marshall, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

*Price Daniel,* Attorney General of Texas, and *Dean J. Capp,* Assistant Attorney General, and *R. Dean Moorhead,* all of Austin, *amici curiae.*

DAVIDSON, Judge.

By Chap. 115, Acts of the Regular Session of the 50th Legislature, the legislature of this State passed what is known as the "Plumbing License Law of 1947," appearing as Art. 6243-101, Vernon's Civil Statutes. Same will be referred to as the Act.

Without setting out the details, the Act provides for the licensing of "master plumbers," "journeyman plumbers," and "plumbing inspectors," and makes penal the conduct of such business without a license.

Appellant, here, relator in the court below, stands charged in the County Court of Harrison County with having engaged in, worked at, and conducted the business of a "master plumber" without a license.

From his arrest under such accusation, relator sought, by writ of habeas corpus, his outright discharge from custody, claiming that the Act, and particularly that part creating the offense charged, was void and violative of both State and Federal Constitutions.

After hearing, the relief prayed for was denied and relator was remanded to the custody of the arresting officer. From this order, this appeal resulted.

Having assailed the constitutionality of the law upon which the accusation was predicated, the attack by writ of habeas corpus was authorized.

The term "plumbing" is defined under Sec. 2(a) of the Act, as and including:

"(1) All piping, fixtures, appurtenances and appliances for a supply of water or gas, or both, for all personal or domestic purposes in and about buildings where a person or persons

live, work or assemble; all piping, fixtures, appurtenances and appliances outside a building connecting the building with the source of water or gas supply, or both, on the premises, or the main in the street, alley or at the curb; all piping, fixtures, appurtenances, appliances, drain or waste pipes carrying waste water or sewage from or within a building to the sewer service lateral at the curb or in the street or alley or other disposal terminal holding private or domestic sewage; (2) the installation, repair and maintenance of all piping, fixtures, appurtenances and appliances in and about buildings where a person or persons live, work or assemble, for a supply of gas, water, or both, or disposal of waste water or sewage."

The terms "master plumber" and "journeyman plumber" are defined as follows (Sec. 2 of the Act) :

"(b) A 'Master Plumber' within the meaning of this Act is a plumber having a regular place of business, who, by himself, or through a person or persons in his employ, performs plumbing work, and who has successfully fulfilled the examinations and requirements of the Board.

"(c) A 'Journeyman Plumber' within the meaning of this Act is any person other than a master plumber who engages in or works at the actual installation, alteration, repair and renovating of plumbing, and who has successfully fulfilled the examinations and requirements of the Board."

In the light of these definitions, it may be said that a "master plumber" is one who, having successfully passed the required examination, engages in the plumbing business in a "regular place of business," while a journeyman plumber is one who, having passed the required examination, engages in or works at plumbing, as a business.

The class or classification created by the Act is that of plumbing business.

The Act is assailed as being unconstitutional and void, in the following particulars:

(a) The police power of the State does not extend to or authorize the legislature to regulate the plumbing business;

(b) the Act is discriminatory and arbitrary class legislation violative of the equal protection clauses of Article 1, Sec. 3 of the Constitution of this State and of the Fourteenth Amendment to the Federal Constitution;

(c) the exemption of cities of less than 5,000 inhabitants, as also exemptions contained in Sec. 3 of the Act, constitutes unreasonable and arbitrary class legislation violative of equal protection.

It may be said, therefore, that the questions to be here determined are:

May the legislature of this State, in the exercise of its police power, regulate and require a license of one engaged in the plumbing business? If so, do the exemptions contained in the Act render it class legislation violative of equal protection?

The protection of the public health, safety, and welfare is a cardinal principle coming within the police power of the State. While there is some authority to the contrary, the great weight of authority in this country is that the plumbing business falls within the police power of the State to regulate. We could dwell at length on a discussion of this question but, here, content ourselves with the statement that we follow the majority rule. We have no difficulty in arriving at the conclusion that a business having to do with the installation, maintenance, and repair of water, gas, and sewer lines is so related to the health, safety, and welfare of the public as to come within the police power of the State, as supporting the conclusions here expressed. See 41 Am. Jur., p. 662, and 53 C. J. S., p. 567, and authorities there listed; Trewitt v. City of Dallas, 242 S. W. 1073.

The question arises as to whether the exemptions mentioned invalidate the Act. In approaching a determination of such question it is well to keep in mind that there is nothing in our State or Federal Constitutions which prohibits the legislature of this State from resorting to classification for the purpose of legislation. The only limitation upon the passage of such legislation is that there must be some reasonable basis for the classification not arbitrary or capricious, and it must rest upon grounds of difference having a fair and substantial relationship to the legislation, so that all persons similarly circumstanced shall be treated alike.

In Ex Parte Tigner, 132 S. W. (2d) 885, affirmed by the Supreme Court of the United States, 310 U. S. 141, 84 L. Ed. 1124, 60 S. Ct. 879, 130 A. L. R. 1321, we announced the controlling rules relative to class legislation, as follows:

"1. The equal-protection clause of the 14th Amendment (U. S.C.A. Const.) does not take from the state the power to classify

in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is extremely arbitrary. Bachtel v. Wilson, 204 U. S. 36, 41, 27 S. Ct. 243, 51 L. Ed. 357, 359; Louisville & N. R. Co. v. Melton, 218 U. S. 36, 30 S. Ct. 676, 54 L. Ed. 921 (47 L. R. A., N. S. 84) ; Ozan Lumber Co. v. Union County Nat. Bank, 207 U. S. 251, 256, 28 S. Ct. 89, 52 L. Ed. 195, 197; Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, 86; Henderson Bridge Co. v. Henderson, 173 U. S. 592, 615, 19 S. Ct. 553, 43 L. Ed. 823, 831."

See, also, 9 Tex. Jur., Constitutional Law, Secs. 119 and 120, p. 555, et seq.; 12 Am. Jur., Sec. 476, p. 140; 16 C. J. S., Constitutional Law, Sec. 507, p. 1006.

It follows that legislation upon a subject or class within the police power which conforms to the rules stated is valid.

Sec. 3, sub-section (b) of the Act exempts "Plumbing work done outside the municipal limits of any organized city, town or village in this state, or within any such city, town or village of less than five thousand (5,000) inhabitants, unless required by ordinance in such city, town or village of less than five thousand (5,000) inhabitants."

The effect of this exemption is to make the Act apply to "plumbing work" done in "organized" cities of and in excess of 5,000 inhabitants. While it is true the legislative body of the exempted cities may make the Act apply in those cities, yet until that delegated authority has been exercised such cities are not within the Act. In so far as the Act is concerned, cities of less than 5,000 inhabitants are exempted therefrom.

Does such exemption constitute the legislation arbitrary, unreasonable, and a denial of equal protection? Population has long been recognized as a basis for classification in legislation. In 12 Am. Jur., Constitutional Law, Sec. 489, p. 169, we find the rule stated as follows:

"Population.—The rule is well settled that under usual circumstances and for most purposes, the legislature may, in the exercise of the various powers of state sovereignty which it possesses, employ population as a basis for classification, making distinctions applicable to people of different localities on such grounds, without violating any of the Federal or state constitutional guaranties of equality."

In 41 Am. Jur., Sec. 14, p. 675, we find the rule stated has been given application to legislation regulating the plumbing business in the following language:

"The general rule that a classification of the cities, towns, and villages of the state by population as a basis for legislation may be made if such classification is based upon a rational difference of situation or condition found in the municipalities placed in the different classes is generally deemed fully applicable to legislation regulating plumbers and electricians and the installation of their work."

In 16 C. J. S., Sec. 506, the rule is stated as follows:

"Legislation limited in its operation to a portion of the state or prescribing different rules for distinct areas is not invalid as denying the equal protection of the laws to individuals, where there is a reasonable basis for the limitation or differentiation and all persons similarly situated in the same place are treated alike; and in no event is it invalid as a denial of the equal protection of the laws to a municipal corporation or other governmental agency."

See, also, 12 Am. Jur., Secs. 488-89, pp. 167-169.

Authorities supporting the rules stated will be found cited under each of the citations.

It is concluded, therefore, that the mere fact that the Act applies only to cities of and in excess of 5,000 inhabitants does not render it invalid.

The question as to whether there was a reasonable basis for that classification will be discussed in connection with the contention that the personal exemptions contained in the Act render it invalid.

Relator argues, with much emphasis, that the personal exemptions render the Act unreasonable and arbitrary class legis-

lation. In support of this contention he cites the case of Jackson v. State, 55 Tex. Cr. R. 557, 117 S. W. 818.

The personal exemptions mentioned are contained in subsection (c) of Sec. 3 of the Act, which reads as follows:

"Plumbing work done by anyone who is regularly employed as or acting as a maintenance man or maintenance engineer, incidental to and in connection with the business in which he is employed or engaged, and who does not engage in the occupation of a plumber for the general public; construction, installation and maintenance work done upon the premises or equipment of a railroad by an employee thereof who does not engage in the occupation of a plumber for the general public; and plumbing work done by persons engaged by any public service company in the laying, maintenance and operation of its service mains or lines and the installation, alteration, adjustment, repair, removal and renovation of all types of appurtenances, equipment and appliances; appliance installation and service work done by anyone who is an appliance dealer, or is employed by an appliance dealer, and acting as an appliance installation man or appliance service man in connecting appliances to existing piping installations. Provided, however, that all work and service herein named or referred to shall be subject to inspection and approval in accordance with the terms of all local valid city or municipal ordinances."

There is exempted from the provisions of the Act, then, the following:

(a) plumbing work done by maintenance employees in connection with the business in which they are employed who do not engage in the occupation of a plumber for the general public;

(b) plumbing work done by railroad employees upon the premises or equipment of a railroad who do not engage in the occupation of a plumber for the general public;

(c) plumbing work done by employees of public service companies in the laying, maintenance, and service of its lines, appurtenances, equipment, and appliances;

(d) plumbing work done by appliance dealers and their employees in connecting appliances to existing piping installations.

Jackson's case involved the validity of an Act of the 30th Legislature in 1907, requiring barbers in the State to have a license or certificate to engage in the occupation of barber and

making it unlawful for any person to follow the occupation of barber without such license. Exempted from the Act were (a) students of the State University or other schools of the State who are or may be making their way through school by serving as barbers, (b) those serving as barbers in any State eleemosynary institution, (c) persons serving as barbers in towns of 1,000 inhabitants or less. A majority of the court held that Act to be invalid, for two reasons: first, the license fee was an unauthorized occupation tax and, second, the exemptions contained in the Act rendered it discriminatory and violative of equal protection. Judge Ramsey dissented, entertaining the view that the license fee was not a tax. He does not appear to have expressed disapproval of the holding that the exemptions invalidated the Act.

The holding in the Jackson case was predicated upon a finding by this court that the barbers legislated against and those exempted were of the same class and that no reasonable basis existed for the exemptions, which made that Act violative of equal protection.

The legal conclusion there expressed was correct, because all legislation which discriminates against persons of the same class and similarly circumstanced falls within the condemnation of equal protection.

It is apparent, then, that Jackson's case was founded upon a determination that the Legislature was not authorized to say that a reasonable basis existed for the classification or that no rational difference existed between those legislated against and those exempted.

Does there exist a material distinction between the instant case and the Jackson case?

In the Barber Act, the class there created and legislated upon was the individual barber, as well as the barber business. Therein lies the material distinction. Here, those persons exempted in Sec. 3 of the Act are employees in no sence engaged in the business of plumbing or operating a regular place of plumbing business. It is apparent, therefore, that those exempted in Sec. 3 of the Act do not fall within the same general classification as do those engaged in the business of plumbing. It is elementary that in order for legislation to come within the condemnation of arbitrary class legislation those exempted must be of the same class as those legislated upon.

It follows, therefore, that the Act is not invalid because of the personal exemptions contained in Sec. 3.

There remains for consideration, then, only the exemption of cities of less than 5,000 inhabitants There is no question but that in the Jackson case one of the reasons assigned for holding the Barber Act to be arbitrary class legislation was the exemption of "persons serving as barber in towns of 1,000 inhabitants or less." Such conclusion was founded upon the proposition that "it may not be readily perceived, nor intelligently understood, why a barber or a lot of barbers in the various towns of Texas of 1,000 inhabitants or less could not as easily spread contagious or infectious diseases from their shops as could the barbers in towns of 1,000 or more." In other words, the business of barbering was so universal in its relation to the public as that no reasonable basis existed whereby different classifications could be made within that group.

If the plumbing business occupies a similar position, then the Jackson case supports relator's contention; otherwise, it does not.

Finally, then, a determination of the question before us rests upon whether or not the legislature was authorized to find that a reasonable basis existed for exempting those engaged in the plumbing business in cities of 5,000 inhabitants and less.

The barber, in the conduct of his business, comes in personal contact with the customer and is to be found conducting his business in every city, town, and village of this State. It was because of this personal contact and relationship common to the public in all cities, towns, and villages in the State that the conclusion was reached in the Jackson case. Such is not true of the plumbing business, for the plumber has to do only with the installation, repair, and maintenance of water, sewer, and gas lines and connections. Nor is the business of plumbing common to the State as a whole, for we know, and the legislature was authorized to find, that there are cities, towns, and villages in this State which do not have water, sewer, and gas lines. Moreover, as cities increase in population, so also, and commensurate therewith, is increased the use of plumbing facilities.

It can hardly be said, therefore, that the danger to the public health and safety arising from the installation, maintenance, and repair of water, sewer, and gas lines and connected

appliances is as great in the smaller as in the larger cities of this State. The legislature, in the exercise of its legislative function, was warranted, therefore, in finding that the danger to the public health and safety sought to be guarded against by the Act was not equal and uniform in all cities of this State.

From what has been said, it is apparent that the legislature was authorized to classify the plumbing business for the purpose of legislation. The holding in the Jackson case, supra, is therefore not here controlling.

Having reached the conclusion that the business of plumbing was subject to classification by the legislature, the question remaining relates to whether or not the exemption of cities of 5,000 inhabitants, and less, was unreasonable.

Again we refer to what was said in the Tigner case, supra, viz.:

"A classification having some reasonable basis does not offend against that clause (equal protection) merely because it is not made with mathematical nicety, or because in practice it results in some inequality."

Such rule is deemed here controlling.

The right of the legislature to create a class or make a classification for legislative purposes carries with it, of necessity, the right also to fix the limits of that classification. It is only when these limits are so unreasonable as to be arbitrary that the courts are authorized to strike down the legislation. While it is true that some inequality may arise as between plumbers conducting their business in a city of 5,000 inhabitants or more and those in cities of less than 5,000, we cannot say that the legislature was not authorized to make the classification it did. The public health and safety sought to be safeguarded by this legislation was of paramount importance.

Believing the Act to be valid as against the contentions here leveled, the judgment of the trial court is affirmed.

Opinion approved by the Court.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for a rehearing appellant attacks the conclusion expressed by this court in the original opinion in which we held that the plumbing statute is valid. He re-asserts that the plumbing license law as enacted by the 50th Legislature is discriminatory, unreasonable, and violative of the equal protection clause of Sec. 3, Art. I, of the Constitution of Texas and the 14th Amendment to the Constitution of the United States.

He bases his contention upon two grounds: first, because all journeymen plumbers and master plumbers holding a license as such from a city examining and supervising board of plumbers in this state and all presently acting plumbing inspectors at the time the act takes effect are exempt from taking an examination provided that they procure a license as a journeyman plumber or master plumber or plumbing inspector by the payment of the required license fee within one hundred and twenty days thereafter. After the expiration of the said one hundred and twenty days, every person applying for such license shall be required to take the examination. He takes the position that this section of the act discriminates against him and all others similarly situated. We see no discrimination in the act since it exempts all persons who came within the qualifications therein mentioned regardless by what authority they were licensed. By paying the license fee within the prescribed period of time, the qualifications of all journeymen plumbers, master plumbers, and plumbing inspectors holding such licenses are recognized.

In our opinion, the state, under its police power, had a right to classify plumbers according to their qualifications, and it was also authorized to recognize plumbing licenses issued by boards of examiners of any and all towns and cities. It occurs to us that the legislature acted within the scope of its authority in exempting from the operation of the act all persons who have consistently pursued a certain trade or avocation for a sufficient length of time to have acquired sufficient technical knowledge to efficiently perform the work so as to protect the health and welfare of the public generally.

If appellant possessed the required qualifications which would exempt him from taking the examination and tendered the license fee within the time prescribed by the act, this would not invalidate the law. If such is the case, however, his remedy would be by mandamus proceeding.

His second contention is that we erred in holding that the provisions of the plumbing license law do not legislate upon the individual plumber, as a class, but only upon the plumbing business. We have again reviewed the question but remain of the opinion that the same was properly disposed of. This phase of the law was discussed by us at length in the original opinion and we see no need of reiterating what we have said therein on the subject.

His third contention is that we erred in sustaining the validity of the law because it discriminated against him, in this, because it permits: (a) plumbing done by anyone who is regularly employed as, or acting as, a maintenance man or maintenance engineer, incidental to and in connection with the business in which he is engaged or employed, and who does not engage in the occupation of a plumber for the general public; (b) construction, installation, and maintenance work done upon the premises or equipment of a railroad by an employee thereof who does not engage in the occupation of a plumber for the general public; (c) plumbing work done by persons engaged by any public service company in the laying, maintenance, and operation of its service mains or lines and the installation, alteration, adjustment, repair, removal, and renovation of all types of appurtenances, equipment, and appliances; (d) appliance installation and service work done by anyone who is an appliance dealer or is employed by an appliance dealer, * * *. Provided, however, that all work and service herein named or referred to shall be subject to inspection and approval in accordance with the terms of all valid local city ordinances.

It will be noted that the persons who are under this subdivision of this section may, without a plumbing license, engage in such work in a limited measure, but their work must be inspected and approved by a plumbing inspector. Unless the persons herein mentioned doing the work authorized under this act have their work inspected and approved, they may be enjoined from thereafter doing such work unless they first take the examination and obtain a license. We believe that the authorities cited in the original opinion sustain the conclusion therein expressed.

Believing that the case was properly disposed of on original submission, the motion for rehearing is overruled.

Opinion approved by the Court.